IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Barcohana, <br><br> Plaintiff, <br><br> v. <br><br> AZURASPACE BEAUTY, <br><br> Defendants. | Case No. 1:25-cv-10736-SRH-BWJ <br><br> **SECOND AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** <br><br> **Honorable Sunil R. Harjani** <br><br> **Magistrate Beth W. Jantz** |

**SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff Michael Barcohana, ("Plaintiff"), through its undersigned counsel, files this Complaint against AZURASPACE BEAUTY (the "Defendant"), and states the following allegations:

**INTRODUCTION**

Plaintiff brings this action against Defendant, AZURASPACE BEAUTY, e-commerce store operator who unlawfully exploits Plaintiff's reputation and goodwill by manufacturing, marketing, offering for sale, and selling unauthorized and unlicensed products bearing infringing and counterfeit imitations of Plaintiff's federally registered trademark (the "Counterfeit Products").

Defendant established an e-commerce store under the Seller Alias AZURASPACE BEAUTY through which Defendant advertises, offers for sale, and sells Counterfeit Products to unsuspecting consumers.

Defendant's Internet Store veils its identity, location, and the full extent of its counterfeiting scheme by interposing the social media and sales platform TikTok between itself

and the consumer. Plaintiff is forced to bring this action to stop the Defendant's counterfeiting of its registered trademark and to protect consumers from purchasing Counterfeit Products online. As a result of the Defendant's actions, Plaintiff has suffered and continues to suffer irreparable harm through consumer confusion and dilution of its valuable trademarks, prompting a request for injunctive and monetary relief.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are based on the same facts, occurrences, harms, and transactions as the federal claims and, therefore, form part of the same case and controversy.

3. This Court may properly exercise personal jurisdiction over Defendant because the Defendant directly targets business activities toward consumers in the United States, including in the State of Illinois, through at least one interactive e-commerce store (the "Online Marketplace") operating under the seller alias AZURASPACE BEAUTY attached hereto as **Exhibit 2** (the "Seller Alias"), and causes harm to Plaintiff within Illinois.

4. Venue is proper in this Court under 28 U.S.C. § 1391.

## THE PLAINTIFF

5. Plaintiff is the exclusive registered owner of the standard character mark, QUEEN TAPE, United States Trademark Registration Number 7824763 ("the QUEEN TAPE Mark"), and is therefore the appropriate Plaintiff to bring this case.

6. The QUEEN TAPE Mark is for "Kinesiology tape; Kinesiology tapes;

Kinesiology tapes, namely, elastic therapeutic tape for the prevention of snoring; Kinesiology tape, namely, elastic therapeutic mouth tape used to promote nasal breathing; Kinesiology tape, namely, elastic therapeutic mouth tape for improving sleep" ("Plaintiff's Goods") in International Class 010.

7. The QUEEN TAPE Mark has been in use in U.S. commerce for Plaintiff's Goods since at least as early as August 3, 2024 ("Plaintiff's First Use Date").

8. The QUEEN TAPE Mark, in connection with Plaintiff's Goods have gained a strong following among health-conscious consumers by combining comfort, effective design, and a wellness-oriented aesthetic.

9. The QUEEN TAPE Mark is widely promoted across wellness and beauty social media channels.

10. The QUEEN TAPE Mark is inherently distinctive, and consumers associate the QUEEN TAPE Mark with the exclusive source of Plaintiff's Goods.

11. The QUEEN TAPE Mark is valid, subsisting, and in full force and effect. A copy of the United States registration certificate for Plaintiff's Queen Tape Mark is attached hereto as **Exhibit 1**.

12. Plaintiff's registration constitutes prima facie evidence of the validity of the marks and of Plaintiff's exclusive right to use the Trademarks in commerce pursuant to 15 U.S.C. § 1057(b).

13. The QUEEN TAPE Mark is prominently displayed on Plaintiff's Goods, as well as in advertising, marketing, and promotional materials. Plaintiff has invested significant time, money, and resources to the creation, promotion, and protection of the QUEEN TAPE Mark. Through these sustained efforts, Plaintiff has developed extensive brand awareness, consumer

recognition and goodwill associated with the QUEEN TAPE Mark. As a result, Plaintiff's Trademarks have become highly distinctive in the marketplace and symbolize the quality, reputation, and trust that consumers have come to expect from Plaintiff's Goods.

14. The QUEEN TAPE Mark has become a valuable asset of Plaintiff's business, embodying the goodwill Plaintiff has established and distinguishing Plaintiff's products from those of competitors.

15. Plaintiff's Trademark has been used in US commerce continuously since at least as early as August 03, 2024, and has never been abandoned.

16. Genuine QUEEN TAPE Products are widely promoted and sold on TikTok Marketplace, Plaintiff's official website, https://queentape.com, and are expanding to other sales and social media platforms, and likely will soon appear on retail shelves.

17. Sales of Genuine QUEEN TAPE Products through multiple channels are substantial and continue to grow, reflecting the strength of Plaintiff's brand and consumer trust.

18. Plaintiff's trademarks and products have also attracted unsolicited attention across social media, wellness blogs, and online communities focused on sleep optimization and breathwork. The growing presence of the QUEEN TAPE brand in the digital wellness industry has further increased the brand's recognition and positive reputation.

19. The QUEEN TAPE Mark has been consistently promoted through social media campaigns, digital advertisements, email marketing, influencer partnerships, and branded packaging. Consumers widely recognize Plaintiff's Trademark as an indicator of origin, quality, and trustworthiness.

20. Plaintiff has invested substantial time, money, and resources in developing, promoting, and protecting the QUEEN TAPE Mark. Plaintiff's exclusive sales channels and

controlled distribution strategy serve legitimate business purposes, including safeguarding its intellectual property, maintaining consistent quality, minimizing consumer confusion, and reducing product liability risk.

21. The QUEEN TAPE Mark has gained widespread recognition and significant brand value. The public, industry participants, and consumers associate QUEEN TAPE-branded products with Plaintiff and identify the Trademarks as symbols of high-quality, effective, and safe sleep support solutions. The significant goodwill and reputation associated with Plaintiff's Trademarks make them some of Plaintiff's most valuable assets.

## THE DEFENDANT

22. Defendant AZURASPACE BEAUTY is an unknown individual and business entity who owns and/or operates at least one e-commerce store under the TikTok Shop platform.

23. On information and belief, Defendant resides and/or operates in the People's Republic of China or other foreign jurisdictions and redistributes products from the same or similar sources in those locations. As evidenced in their use of Ximonth Manufacturing a Chinese manufacturer.

24. Based on information and belief, the Defendant operates at least one e-commerce store and the tactics employed by the Defendant to hide its identy and the full extent of its operations make it nearly impossible for Plaintiff to identify the Defendant's true identy and to understand the full scope of its network.

25. If the Defendant provides additional credible information regarding it identy, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

26. Plaintiff's overall success using the QUEEN TAPE Mark has resulted in significant counterfeiting of the Brand Trademark.

27. Platforms like TikTok do not adequately verify and confirm the identities of new sellers, allowing counterfeiters to routinely use false or inaccurate names and addresses when registering with these e-commerce platforms.

28. E-commerce stores operating under the Seller Aliases, such as Defendant, appear sophisticated and accept payment in United States currency and/or funds from United States bank accounts via credit cards, Alipay, Amazon Pay, Google Pay and/or PayPal.

29. The Online Marketplaces often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

30. Plaintiff has not licensed or authorized Defendant AZURASPACE BEAUTY to use the QUEEN TAPE Mark, and none of the Defendants are authorized retailers or resellers of genuine QUEEN TAPE products.

31. Defendant also deceives unknowing consumers by using Plaintiff's Trademark, within the content, text, pictures, Search Engine Optimization ("SEO") terms, and/or meta tags for their Online Marketplaces to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's QUEEN TAPE products.

32. Counterfeiters like Defendant commonly engage in fraudulent conduct when registering their identities, such as Seller Aliases, by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operations.

SECOND AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT  Case No. 1:25-cv-10736-SRH-BWJ

33. Defendant's unauthorized use of Plaintiff's Trademark to sell counterfeit products in Illinois causes irreparable harm to Plaintiff by damaging its goodwill, reputation, brand, and trademark value. Attached as Exhibit 2 are true and correct copies of the use of Plaintiff's Mark by the Defendant.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 33, above.

35. Plaintiff is the exclusive registered owner of the standard character mark, QUEEN TAPE, United States Trademark Registration Number 7824763 ("the QUEEN TAPE Mark").

36. Plaintiff's rights in the QUEEN TAPE Mark are senior to any rights that Defendant may claim.

37. Without authorization or consent, Defendant has used, and continues to use, the QUEEN TAPE Mark in commerce in connection with the offering for sale, sale, distribution, and/or advertising of goods that are identical or nearly identical to Plaintiff's goods.

38. The QUEEN TAPE Mark is a highly distinctive mark.

39. Defendant has and continues to sell, offer to sell, market, distribute, and advertise the Counterfeit Products bearing the QUEEN TAPE Mark without Plaintiff's authorization, license, or permission to do so.

40. Defendant's use of the mark is likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods by Plaintiff.

41. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42. Defendant's counterfeiting has directly and proximately caused the injuries and damages suffered by Plaintiff.

43. Defendant's ongoing acts of trademark infringement are causing, and unless enjoined will continue to cause, Plaintiff irreparable harm, including but not limited to loss of control over its reputation and goodwill, dilution of the distinctiveness of its Trademarks, and harm to the public's ability to associate Plaintiff's Trademarks with goods originating from Plaintiff. Such injuries cannot be fully compensated by monetary damages.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

44. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the Paragraphs 1 through 43, above.

45. Defendant's promotion, marketing, offering for sale, and sale of Counterfeit Products using the QUEEN TAPE Mark without authorization, have and are creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, approval by, or association with Plaintiff, of the Defendants and their Counterfeit products.

46. By using Plaintiff's Trademark in connection with the sale of Counterfeit Products, Defendant creates a false designation of origin.

47. By using Plaintiff's Trademarks, Defendant creates a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

48. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

49. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, irreparable harm, including loss of goodwill, injury to reputation, and damage to the distinctiveness of its QUEEN TAPE mark.

50. Monetary damages cannot adequately compensate such injuries. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116, as well as damages, disgorgement of Defendant's profits, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

51. If Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its QUEEN TAPE Mark.

## COUNT III

**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
(815 ILCS § 510/1, et seq.)**

52. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 51, above.

53. Defendant has engaged in acts constituting a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq., including but not limited to:

A: passing off its counterfeit products as those of Plaintiff's by unauthorized use of Plaintiff's Trademark, thereby causing a likelihood of confusion or misunderstanding regarding the source of their goods or an affiliation, connection, or association with genuine QUEEN TAPE goods.

B: falsely representing that its products have Plaintiff's approval when they do not; and

C: engaging in conduct which creates a likelihood of confusion or misunderstanding among the public.

54. Plaintiff has been, and will continue to be, irreparably harmed by Defendant's deceptive trade practices, including harm to its goodwill, reputation, and the distinctiveness of its QUEEN TAPE mark.

55. Unless enjoined by the Court, Plaintiff will continue to suffer future irreparable harm as a direct result of Defendant's unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, though, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using Plaintiff's Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product, including within the content, text, SEO terms, and/or meta tags for its Online Marketplace, that is not a genuine QUEEN TAPE product or is not authorized by Plaintiff to be sold in connection with Plaintiff's registered Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Brand product or any other product produced by Plaintiff by using the QUEEN TAPE Mark to sell and offer for sale such products that are not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff;

      c.      committing any acts calculated to cause consumers to believe that Defendant's inferior products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff or its Brand;

      d.      further infringing Plaintiff's Trademarks and damaging Plaintiff's reputation and goodwill;

      e.      otherwise competing unfairly with Plaintiff through the unauthorized use of Plaintiff's Trademarks in any manner;

      f.      shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory sold or offered for sale through the unauthorized use of the Trademark;

      g.      using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant's stores on Defendant's Online Marketplaces or the Platform, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendant could continue to sell knockoff Brand products through the unauthorized use of the Queen Tape Mark; and

      h.      operating and/or hosting websites at the Defendant's Online Marketplaces and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product through the unauthorized use of Plaintiff's QUEEN TAPE Mark.

      2.      Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including TikTok, Amazon, Alibaba, DHGate, eBay, and Walmart, shall disable and cease displaying any

advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's QUEEN TAPE Mark;

3. That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the QUEEN TAPE Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the QUEEN TAPE Trademarks;

5. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6. Award any and all other relief that this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: October 17, 2025	Respectfully Submitted,

By: /s/ Joshua H. Sheskin
Joshua H. Sheskin (FL Bar No. 93028)
Joseph W. Droter (IL Bar No. 6329630)
Nazly A. Bayramoglu (NM Bar No. 151569)
Gokalp Bayramoglu (NV Bar No. 15500)
Nihat Deniz Bayramoglu (NV Bar No. 14030)
**BAYRAMOGLU LAW OFFICES LLC**
233 S. Wacker Drive, 44th Floor, #57
Chicago, IL 60606
Tel: (702) 462-5973   Fax: (702) 553-3404
Joshua@bayramoglu-legal.com
Joseph@bayramoglu-legal.com
nazy@bayramoglu-legal.com
gokalp@bayramoglu-legal.com
deniz@bayramoglu-legal.com
*Attorneys for Plaintiff*